IN RE APPLICATION OF
FRANCISCO LUIS DIEZ BERNAL,
_____/

**ORDER ON BILBO DEVELOPMENT LLC'S AND MORRISON USA, LLC'S
MOTION TO QUASH SUBPOENAS
OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

This matter is before the Court on Bilbo Development LLC's ("Bilbo") and

Morrison USA, LLC's ("Morrison") (the "Florida LLCs") motion to quash subpoenas

to produce documents, or, alternatively, motion for protective order against

Francisco Luis Diez Bernal ("Mr. Bernal") pursuant to 28 U.S.C. § 1782 and Rule

45(d)(3) of the Federal Rules of Civil Procedure. [D.E. 8]. Mr. Bernal responded to

the motion on September 20, 2018 [D.E. 14] to which the Florida LLCs replied on

September 27, 2018. [D.E. 15]. Therefore, the motion is now ripe for disposition.

After careful consideration of the motion, response, reply, relevant authority, and

for the reasons discussed below, the motion to quash is **GRANTED in part** and

**DENIED in part**.

## I.     BACKGROUND

Mr. Bernal seeks assistance to obtain documentary evidence from two Florida

limited liability companies. The evidence sought is for use in civil proceedings

before the Commercial Court of Madrid, Spain (the "Spanish Court"). Mr. Bernal is

a plaintiff in that proceeding and seeks evidence to support his claims against Ciser

Obras Y Servicios S.L. ("Ciser[1]") and Victor-Manuel Martinez Orgaz ("Mr. Martinez"), the majority shareholder of Ciser, for the (1) misappropriation of corporate assets, and (2) breach of fiduciary duty. Mr. Bernal believes that Ciser and Martinez improperly transferred assets and/or funds to the Florida LLCs. He therefore seeks discovery for purposes of obtaining information regarding any deposits, transfer of tangible and intangible property, or any other transfer or transactions made from Ciser to the Florida LLCs from the dates of their incorporation to the present.

## II.    ANALYSIS

### A.  *The Statutory Requirements of Section 1782*

The purpose of § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also In the Matter of Lancaster Factoring Co., Limited*, 90 F.3d 38, 41 (2d Cir. 1996) (finding that the purposes of § 1782 are "equitable and efficacious procedures in United States courts for the benefit of tribunals and litigants involved in foreign litigation" and "to encourag[e] foreign countries by example to provide similar assistance to our courts.") (internal citations omitted). The statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id*. at 248.

---

[1]     Ciser is a company incorporated in 2004 and based in Spain whose business consists of construction of airports and railway infrastructure, engineering services, water treatments, contamination remediations, and other related services throughout Europe and South America.

Pursuant to section 1782, a United States District Court, upon the application of an interested person, may order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782.

A district court must first determine whether there is a statutory basis for the § 1782 application. The Eleventh Circuit has found that there are four statutory requirements that must be considered in making that determination:

> A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007). If the statutory requirements are met, district courts must always determine whether the requested discovery complies with the Federal Rules. "For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45." *In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) (citing *In re Application of Inversiones v. Gasolinera Petroleos Vanezuela, S. De R.L.,* 2011 WL 181311, at * 6 (S.D. Fla. Jan. 9, 2011)). Assuming that all of the above requirements are met, section 1782 "authorizes, but *does not require*, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Intel Corp.*, 542 U.S. at 247 (emphasis added); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory").

In addition to the statutory requirements, district courts must also consider several discretionary factors articulated by the Supreme Court in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding, (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65. Ultimately, district courts must exercise their discretion to achieve the two aims of section 1782,

which are to "provid[e] efficient means of assistance to participants in international litigation and [to] encourage[e] foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997).

The Florida LLCs do not dispute (1) that the Spanish Court is a foreign tribunal, (2) that the Florida LLCs reside within the Southern District of Florida, (3) that Mr. Bernal is an interested person in a foreign proceeding, or (4) that the documents requested fall within the confines of section 1782. That means that Mr. Bernal satisfies three of the four statutory requirements. More specifically, the first requirement is met because, Mr. Bernal, as a party to the foreign proceeding, plainly qualifies as an "interested person" under the statute. 29 U.S.C. § 1782. The second requirement is met because Mr. Bernal's application seeks evidence in the form of document productions. And the fourth requirement is met because Mr. Bernal seeks discovery from two Florida LLCs – both of which are headquartered in Florida. That is, the Florida LLCs reside in and are "found in the district of the district court ruling on the application for assistance." 28 U.S.C. § 1782(a). As such, we agree with both parties that the first, second, and fourth statutory requirements have been met.

### B. *The "For Use" Requirement*

The only statutory requirement at issue in the motion to quash is whether Mr. Bernal meets the "for use" requirement under 28 U.S.C. § 1782 – that the evidence sought must be for use in a foreign proceeding or an international tribunal.

The Florida LLCs contend that none of the items requested in the subpoenas are relevant and that any evidence obtained cannot be *used* in the foreign proceeding because no additional discovery is permitted. On the other hand, Mr. Bernal argues that it is an open question on whether discovery may be admitted and that it would be improper for the Court to grapple with the complexities of Spanish law.

As background, Mr. Bernal commenced foreign proceedings against Ciser and Mr. Martinez on July 19, 2016. On May 8, 2017, the parties appeared before the Spanish Court to conduct what is referred to as an "Audiencia Previa" – a procedural stage where the Florida LLCs contend that no further discovery is permitted.[2] At that proceeding, the parties advised the Spanish Court of what witnesses they would call and what proof they would present at trial.

The Florida LLCs argue that Mr. Bernal's subpoenas[3] should be quashed because, at the May 8, 2017 proceeding, Mr. Bernal did not request any additional information from Ciser, Mr. Martinez, or any other third-party entities.[4] Mr. Bernal only requested that the Spanish Court appoint an expert so that if he prevailed on one of his claims, there would be evidence available at trial to value his shares. The Spanish Court granted Mr. Bernal's request and appointed Mr.

---

[2] The Florida LLCs note that the only exception to this rule is if the documents sought for trial did not exist as of May 8, 2017. The Florida LLCs argue, however, that this does not apply because no argument has been made in support of this exception.

[3] The subpoenas seek documents between 2013 and May 8, 2017.

[4] The affidavit of Mr. Martinez's Spanish attorney, Ernesto Toth ("Mr. Toth"), was filed in support of the motion to quash.

Francisco Jose Conca Higon ("Mr. Higon") to provide expert valuation services. In doing so, Mr. Higon requested financial information from the Florida LLCs and the latter complied with the request. In December 2017, Mr. Higon presented his report. Mr. Bernal was apparently frustrated with the results and on February 13, 2018, Mr. Bernal filed a motion seeking to introduce his own valuation of Ciser's Shares. The Spanish Court, however, denied Mr. Bernal's attempt to use the revised valuations. [D.E. 9-2]. On May 17, 2018, Mr. Bernal requested that the Spanish Court reconsider its prior decision, but the Court rejected that motion on May 17, 2018. [D.E. 9-3].

The Florida LLCs claim that the Spanish Court's repeated denials of Mr. Bernal's motions establish that the only documents that may be presented at trial in the foreign proceedings are those that were attached to Mr. Bernal's original complaint or otherwise discussed at the May 8, 2017 hearing. To sidestep the Spanish Court's repeated rulings, the Florida LLCs allege that Mr. Bernal is seeking to use the United States federal courts to obtain information that is neither relevant nor admissible. Therefore, the Florida LLCs conclude that the third statutory requirement under § 1782 – that the information sought be used in a proceeding before a foreign tribunal – cannot be met because there is no practical way "to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).

Mr. Bernal's response is that the motion to quash lacks merit because it argues for restrictions on granting discovery applications that do not exist. Mr.

Bernal claims that the Florida LLCs want the Court to wade into the question of the admissibility of evidence in foreign tribunals, but that the Eleventh Circuit has explicitly rejected this approach. *See In re Clerici*, 481 F.3d 1324, 1333 n.12 (11th Cir. 2007) ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.") (quoting *Intel Corp.*, 542 U.S. at 260); *see also In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 (S.D. Fla. 2012) ("[I]t is now clear that "§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding.") (citing *Intel,* 542 U.S. at 247; *In re Clerici,* 481 F.3d at 1333 n.12).

Mr. Bernal also takes issue with Mr. Martinez's attorney, Mr. Toth, and the declaration filed in support of the motion to quash because federal courts should not venture into the procedural and legal questions presented in a foreign proceeding. For example, Mr. Toth states that discovery is closed in the Spanish proceedings and that no information produced in response to the subpoenas can be accepted at this stage of the case. Mr. Bernal also argues that Mr. Toth's conclusions are incorrect, unsupported in Spanish law, and ignores the various opportunities that Mr. Bernal has to submit evidence.[5] And even if Mr. Toth's conclusions were

---

[5] Mr. Bernal relies on the declaration of his Spanish attorney, John Gustafson ("Mr. Gustafson"), which states that Mr. Toth's conclusions are untrue under the applicable Rules of Civil Procedure, Spanish statutes, and relevant case law.

correct, Mr. Bernal believes that it would be inappropriate for the Court to attempt to familiarize itself with the laws and procedures of a foreign country. If that were the case, Mr. Bernal fears that petitions would devolve into a routine battle of legal experts even though "[n]othing in the history or purpose of Section 1982 indicates that such battles over the interpretation of foreign law are necessary or desirable before implementing the liberal employment of discovery granted by the statute." *In re Application of Time, Inc.*, 1999 WL 804090, at \*6 (E.D. La. Oct. 6, 1999)). Therefore, Mr. Bernal concludes that the Florida LLCs have failed to meet their burden of establishing that there is an admissibility or discoverability requirement under § 1782.[6]

Mr. Bernal's arguments are well taken because there is nothing in the statutory text to support the interpretation that the Florida LLCs advance in their motion to quash. The Second Circuit's decision in *In re Accent Delight Int'l Ltd.*, is instructive on this point. *See* 869 F.3d at 132. In that case, the Second Circuit found that two principles emerge from the "for use" requirement:

> First, a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding. Second, as long as he or she makes that showing, it is not fatal to the application that he or she lacks a claim for relief before the foreign tribunal, whether for damages or otherwise. Rather, the term "for use" in Section 1782 has only its ordinary meaning—that the requested discovery is "something that will be employed with some advantage or serve some use in the proceeding."

---

[6]     Even if an admissibility test was required, Mr. Bernal suggests that he has multiple opportunities to submit any discovery to the Spanish Courts for their consideration until the conclusion of trial.

*Id.* (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).

With these principles in mind, Mr. Bernal has the practical ability to inject the requested information into the foreign proceeding because the Spanish Court has the discretion to admit information if certain requirements are met. Mr. Gustafson references a few examples in his declaration:

> The Spanish Supreme Court interpreting article 286 of the Rules of Civil Procedure has ruled "that the statute permits allegation of new facts relevant to decide the case even at the time of the trial".
>
> [A]rticle 207.1 and 2 allow the incorporation of documents of a later date of that of the complaint, or even of an earlier date when the party concerned argues and justifies that such documents were not know[n]at the time.
>
> The Court of Appeals of Leon has indicated the following "the design of the Ley de Enjuiciamiento Civil permits the introduction of allegations and new factual background, from the moment in which the complaint or answer to the complaint are filed up until the very moment of the trial, with broad possibilities available for the litigation parties".
>
> Article 433 of the Spanish Rules of Civil Procedure which regulates the structure and hearing of the trial states in its second paragraph the following: "Furthermore, prior to the practice of the evidence, should any of the parties argue or had previously argued, new facts or facts of new notice known after the preliminary hearing, the parties will be heard on the matter as well as with regard to the proposal and admission of the evidence contemplated in article 286".
>
> Article 435 of the Rules of Civil Procedure also confer the discretionary authority to the judge hearing the case after the trial with suspension of the term to render the judgment, to practice or accept means of evidence that have not been filed or presented in early stages of the proceedings if deemed relevant and pertinent.

[D.E. 14-1] (internal citations omitted).

Of course, the Florida LLCs rely on an entirely different set of legal principles with citations to Spanish authority to conclude otherwise. Even if the Florida LLCs

are correct that the Spanish Court will ultimately decide not to consider the evidence sought, this is not fatal to the § 1782 petition because the requested discovery could conceivably be used to some advantage in the foreign proceeding. That is, in deciding whether this statutory requirement is met, we need "not attempt to conduct a detailed analysis of foreign law," but rather focus on "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts." *In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013).

Here, both sides have submitted affidavits from purported experts on Spanish law with citations to Spanish court decisions and the Spanish Code of Civil Procedures. And both sides, and their experts, reach contradictory conclusions as to whether Mr. Bernal will be allowed to admit new evidence in the foreign proceeding. "The Court need not discuss these differences of opinion in any depth, as the Court concludes that, 'in the end [it] is left without an answer as to which expert is correct.'" *In re Sergeeva*, 2013 WL 12169388, at *4 (N.D. Ga. Nov. 22, 2013) (quoting *In re Gemeinshcaftspraxis*, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006)). This is not a case where the Spanish Court has unequivocally stated that it will not consider any new evidence from Mr. Bernal and the Florida LLCs concede that there are some circumstances where new evidence may be presented. It is therefore the Spanish Court, rather this this Court, that should decide whether additional evidence is admissible and it will be in a better position to do so if Mr.

Bernal is permitted to conduct the requested discovery first. *See, e.g.*, *In re Application of Grupo Qumma*, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first. If the § 1782 application were to be denied, Qumma would be deprived of any opportunity even to try to offer the evidence.").

If the Spanish Court determines that Mr. Bernal cannot introduce any new evidence, it can simply exclude that evidence from consideration, but that is a determination for the Spanish Court to make. Nor does "[s]ection 1782 . . . require that every document discovered be actually used in the foreign proceeding." *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009). Even if the Spanish Court should ultimately decline to accept new evidence, the requested discovery would still be "for use in a foreign proceeding" because Mr. Bernal intends to offer it in good faith and argue for its admission. We therefore conclude that Mr. Bernal has satisfied the third statutory requirement of § 1782 by showing that the requested discovery is "for use" in a foreign proceeding.

## C.    *Intel's Discretionary Factors*

Once the statutory requirements of § 1782 have been met, district courts must also consider the four discretionary factors set forth in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding because "the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from

a nonparticipant," (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or unduly burdensome. *Intel Corp.*, 542 U.S. at 264-65. While the four factors are commonly discussed on an individual basis, they "are not stand-alone categorical imperatives" but rather "involve overlapping considerations, [which] are considered collectively by the court." *In Matter of Appl. of Action & Protection Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. June 19, 2014) (quotation omitted).

In this case, the Florida LLCs do not specifically address the first, second, or third *Intel* factors; rather they focus exclusively on the fourth factor. However, many of the arguments presented above relate indirectly to the second factor – meaning it would be prudent to consider all the factors for the sake of completeness to ensure that the discovery sought does not run afoul of the Supreme Court's decision in *Intel*. We will therefore consider each factor in turn.

### D. *The First Factor: Whether Respondents are Participants in the Foreign Proceeding*

If the respondents in a section 1782 action are "participant[s] in the foreign proceeding," then the need for U.S.-based discovery is "not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Neither Mr. Bernal nor the Florida LLCs assert that the respondents are a participant in the foreign proceeding. In fact, the

Florida LLCs concede in their motion to quash that they are non-parties. [D.E. 14] ("The Subpoenas seek sensitive information pertaining to entities and individuals who are not parties to the Ciser Proceeding."). Therefore, based on the record presented, we conclude that the Florida LLCs are not participants in the foreign proceeding and that the first factor weighs in favor of denying the motion to quash.

### E.  *The Second Factor: Receptivity of the Foreign Tribunal*

The second *Intel* factor examines whether the foreign tribunal "is willing to consider the information sought." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013). Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).

Instead, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures . . . provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at 1100 (footnotes omitted); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,

376 F.3d 79, 84 (2d Cir. 2004) (denying discovery because "the German government was obviously unreceptive to the judicial assistance of an American federal court" since it requested the court to deny petitioner's § 1782 application); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding that the second *Intel* factor weighed in favor of respondents because the Korean Fair Trade Commission's amicus brief asked the court to deny petitioner's applications and that it had no need or use for the requested discovery).

Here, the Florida LLCs suggest in their opposition that Mr. Bernal is attempting to sidestep the close of the discovery period in Spain. But, this argument lacks merit for the reasons set forth above because, even if the Spanish Court ultimately rejects the discovery sought, there is discretion to admit the documents if they meet certain procedural requirements. We also decline "to engage in 'speculative forays' into 'unfamiliar' legal territories to determine the likely reaction of a Spanish court to any Section 1782 discovery." *In re Sampedro*, 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018) (quoting *Euromepa S.A.*, 51 F.3d at 1099); *see also In re Request For Judicial Assistance from Seoul Dist. Criminal Ct., Seoul, Korea,* 555 F.2d 720, 723–24 (9th Cir. 1977) ("[O]ur federal courts, in responding to requests, should not feel obliged to involve themselves in technical questions of foreign law relating to subject-matter jurisdiction of foreign or international tribunals, or the admissibility before such tribunals of the testimony or material sought. This is not to say that jurisdiction of the requesting court is never an appropriate inquiry. If departures from our concepts of fundamental due

process and fairness are involved, a different question is presented ...." (citation omitted)). We need only consider authoritative proof that a foreign tribunal would reject evidence obtained under section 1782.

Importantly, "[t]his factor does not . . . require [Mr. Bernal] to give notice to the Spanish court so that it may indicate its receptivity to foreign discovery, nor does it turn on the admissibility of any Section 1782 discovery in the Spanish proceeding." *In re Sampedro*, 2018 WL 5630586, at *4. And we will not engage in a "battle-by-affidavit of international legal experts" to determine whether the Spanish Court will conclusively admit the documents sought nor not. *See Euromepa*, 51 F.3d at 1099. Rather, we consider only "authoritative proof . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* "Absent this type of clear directive . . . a district court's ruling should be informed by Section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Id.* at 1100 (internal quotations omitted). In the absence of any evidence from the Florida LLCs of a Spanish declaration that specifically addresses and rejects the use of discovery gathered aboard – and in light of the policy goals of section 1782 – this factor weighs in favor of denying the motion to quash.

## F. *The Third Factor: Foreign Proof-Gathering Restrictions*

The third *Intel* factor asks whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or

the United States." *Intel*, 432 U.S. at 264-265. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, 'a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *6 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

"This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules. However, this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (citations omitted). "Like the other *Intel* factors, this factor should not cause district courts to delve deeply into an analysis of the discovery procedures of foreign countries." *In re Sampedro*, 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018). "Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by

empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original) (internal quotations omitted).

Therefore, the question presented is not whether the Spanish Court would order the requested discovery if it had jurisdiction over the Florida LLCs but whether there are Spanish proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought. The Florida LLCs have not made any argument that Spanish discovery procedures would preclude the type of discovery requested here. And in the absence of any showing that the discovery sought would circumvent Spanish proof-gathering restrictions that are akin got privileges, this factor weighs in favor of denying the motion to quash.

### G. *The Fourth Factor: Overbroad and Unduly Burdensome*

The final argument presented is whether Mr. Bernal's subpoenas are overbroad and/or unduly burdensome. The subpoenas request: (1) "[a]ll communications between [the Florida LLCs] and [Ciser], including any correspondence files relating to Ciser", (2) "[a]ll communications between [the Florida LLCs] and [Mr. Martinez], including any correspondence files relating to Ciser or any of its subsidiaries," and (3) all communications between Bilbo and Morrison. [D.E. 8]. The Florida LLCs argue that the discovery sought is irrelevant and not probative of the claims pending for trial in Spain. The Florida LLCs also claim that the word "communications," is vague as it is neither defined in the

subpoenas nor is it narrowly tailored so that the items requested are limited to issues that are relevant in the foreign proceeding.

Making matters worse, the Florida LLCs contend that the subpoenas are overbroad because they request documents with the use of the terms "relating to", but with no specificity on the nature of the communication sought. The Florida LLCs also argue that many courts have considered this language in other cases and have concluded that these types of requests are overbroad on their face. *See, e.g.*, *Carter v. Archdale Police Dep't*, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014) ("A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion. Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.") (quoting *Massachusetts v. United States Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989)); *see also In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *5 (N.D. Cal. Feb. 27, 2012) ("The Big Ten Conference objects to producing any documents that 'relate to' the consent forms or to policies concerning the consent forms, as searching for these documents would be unduly burdensome given the current wording of the document requests . . . The portions of the document requests that call for material other than the exemplar consent forms themselves are overly broad . . . because they contain no meaningful limitations to reduce the burden on the nonparties of producing responsive documents.").

Therefore, the Florida LLCs conclude that the requests have no relevancy to the foreign proceedings and place an undue burden determine whether documents are responsive or not. *See Sonnino v. Univ. of Kansas Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) ("This Court has recognized on many occasions that the use of such omnibus terms as 'relating to' or 'regarding' can render a discovery request overly broad on its face.") (citing *Stewart v. Mtichell Transp.*, 2002 WL 1558210, at *4 (D. Kan. July 8, 2002) (finding that a subpoena requesting "all records, documents or information in your possession regarding [Defendant], including, but not limited to, your complete personnel file, job applications, job description and performance evaluations" was overly broad on its face); *Bradley v. Val–Mejias,* 2001 WL 1249339, *6 (D. Kan. Oct. 9, 2001) (finding that the use of the term "pertaining to" rendered a document request as overly broad on its face); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 197 (D. Kan. 1996) (same); *Western Res., Inc. v. Union Pac. RR. Co.,* 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001) (finding that the use of the phrase "relate to" rendered document requests overly broad on their face)).[7]

Mr. Bernal's response is that the subpoenas are narrowly tailored because of the relief sought in Spain. As background, Mr. Bernal seeks (1) a declaratory judgment regarding the transfer of tangible and intangible assets to Miami, FL, (2)

---

[7] As their final argument, the Florida LLCs claim that the subpoenas should be quashed because they request sensitive personal and financial information of individuals and entities who are not parties to the foreign proceedings such as banking information and statements, fund transfers, credit card statements, tax returns, leases, payments to individuals, employees' residency documents, work permits, and employment contracts.

a declaratory judgment as to Ciser's obligation to repurchase Mr. Bernal's shares which requires a valuation of not only Ciser but all of its holdings and subsidiaries, including the Florida LLCs, (3) individual liability, and (4) damages against Mr. Martinez based on his fraudulent and abusive conduct and his disregard of Spanish statutory procedures.

Mr. Bernal argues that the subpoenas are not overbroad because the foreign proceeding involves the valuation of the Florida LLCs. In other words, Mr. Bernal suggests that evidence of transfers of assets from Ciser, its subsidiaries, employees, Mr. Martinez, or his wife to the Florida LLCs may appear in various corporate documents, taxes, and banking statements. As such, Mr. Bernal believes that the subpoena is specifically tailored to capture financial information – specifically communications relating to the assets and/or valuation of Ciser.

As an initial matter, we agree with the Florida LLCs that some of the subpoena requests are overbroad. While many of the requests are narrowly tailored to the discovery sought, the initial three requests subpoena are improper because they seek all communications relating to either the Florida LLCs, Ciser, or Mr. Martinez. Without any limitations, Mr. Bernal is requesting every communication involving these entities or persons whether or not they are relevant to the underlying claims in the foreign proceeding. As such, the subpoenas, as drafted, cannot stand because the use of the terms "relating to" and "any correspondence" "make the requests overbroad, vague, and ambiguous." *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla.*, 2010 WL 5093746, at *6 (S.D. Fla.

Dec. 8, 2010). And "[b]ecause these terms are broad, they might well encompass irrelevant information." *Id.* (citing *Sonnino v. Univ. of Kan. Hosp. Auth.,* 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (holding that request for production seeking "all documents that relate to or concern" a particular topic was "overly broad on its face"); *see also Audiotext Commc'ns v. U.S. Telecom, Inc.,* 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995) (explaining that discovery requests worded too broadly "function like a giant broom, sweeping everything in their path, useful or not")).

The Court will therefore narrow requests nos. 1 through 3 so that the Florida LLCs can be certain on what information the discovery requests cover and what information is responsive. First, the term "communications" will incorporate the same definition as document," since the latter term should eliminate any confusion on the type of information sought. Given the broad definition of "document" in the subpoenas, this provides adequate guidance for the Florida LLCs to respond to the subpoena.[8] The second limitation that we will impose is to construe any correspondence between the entities and/or persons found in requests 1-3 to the topics identified in the remainder of the requests. In other words, for the

---

[8]     Mr. Bernal did not define the term "communications," nor did he offer any additional guidance in his opposition to the motion to quash. In any event, the definition of document should suffice because Mr. Bernal defines it "to mean any writing, email, recording or photograph including, but not limited to, electronic documents, which are in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including but not limited to: correspondence, emails, memoranda, agendas, facsimiles, drafts, notes, messages, diaries, minutes, books, reports, work papers, charts, ledgers, invoices, computer printouts, microfilms, videotapes or tape recordings, or any record in any electronic format or other medium." [D.E. 1-2].

information to be responsive, requests 1-3 must include some information between the entities and/or persons involving (1) the transferring of funds, property, or equipment, (2) public works projects, (3) joint venture agreements, or (4) increases in capital.[9]

As for the concern over the production of sensitive personal and financial information, there is no reason why a stipulated protective order cannot be mutually agreed upon that would limit any use of the items produced for consideration in the foreign proceeding. That is, to the extent the Florida LLCs believe that a protective order is required to safeguard the confidentiality of any discovery materials, the parties shall work cooperatively in submitting a protective order to the Court. Accordingly, the motion to quash is **GRANTED in part** and **DENIED in part**.

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the motion to quash is **GRANTED in part** and **DENIED in part**. [D.E. 8]. Any responsive documents to the subpoenas should be produced within fourteen (14) days from the date of this Order.

---

[9]    This is not meant to be an exhaustive list of the topics included in the subpoenas. We merely reference a few topics to illustrate how the subpoenas should be narrowed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of December, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge